IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 06-00080 SOM (02) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING RODNEY JOSEPH'S |
| | ) | SECOND MOTION TO DISQUALIFY |
| vs. | ) | THIS JUDGE (DOCKET |
| | ) | NUMBER 936) |
| RODNEY JOSEPH (02), | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING RODNEY JOSEPH'S SECOND
MOTION TO DISQUALIFY THIS JUDGE (DOCKET NUMBER 936)

I.      INTRODUCTION.

        Defendant Rodney Joseph moves to disqualify this judge,

arguing, among other things, that this judge, having accepted

Joseph's guilty plea and reviewed his Presentence Investigation

Report in preparation for sentencing him, should not preside over

his trial now that he has withdrawn his guilty plea.  This is

Joseph's second disqualification motion.  He withdrew his first

disqualification motion on November 10, 2008, after this judge

had entered the courtroom prepared to conduct a hearing on that

motion.  Three days after Joseph withdrew his first

disqualification motion, the Ninth Circuit issued In Re Gallaher,

548 F.3d 713 (9th Cir. 2008), addressing the issue of a judge's

examination of a PSR before conviction.  This judge promptly

invited the parties to review that decision to determine whether

they thought a renewed disqualification motion was appropriate.

Joseph responded on December 1, 2008, by filing a new

disqualification motion (Docket Number 936) that was nearly identical to the withdrawn one.  Defendant Ethan Motta, who had stated earlier that he was not seeking this judge's disqualification, joins in this second disqualification motion.

This judge notes at the outset that she has not transferred this disqualification motion to another judge.  As indicated by his repeated citations to 28 U.S.C. § 455(a) in the Memorandum of Law attached to his motion on December 1, 2008, Joseph is proceeding under that provision, not under 28 U.S.C. § 144.  Only the latter provision contains a statutory requirement that the disqualification motion be transferred to another judge.

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Joseph submits no declaration or affidavit stating that this judge is actually biased or prejudiced against him or in favor of the Government.  The only declaration submitted by Joseph is his counsel's declaration, which recites the procedural history of this case and contains assertions of counsel's "belief" that this judge is aware of confidential information relating to Joseph and is in a position to make decisions based on such information.

2

The court does not read this declaration as asserting that this judge has an actual bias or prejudice against Joseph or in favor of the Government.  In the absence of a statement to that effect, Joseph cannot proceed under § 144 and must instead rely on the broader disqualification provision in 28 U.S.C. § 455(a).

Section 455(a) states, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Joseph argues that this judge's impartiality might reasonably be questioned because this judge accepted Joseph's earlier guilty plea, read Joseph's PSR in preparation for sentencing him, obtained ex parte sealed information concerning Defendant Kevin A. Gonsalves's recent guilty plea and plea agreement, and stated reasons for the sentence imposed on Gonsalves.

The Ninth Circuit has explained that, in deciding whether to recuse, a judge should determine whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  See Pesnell v. Arsenault, 543 F.3d 1038, 1043 (9th Cir. 2008); see also United States v. Holland, 519 F.3d 909, 913 (9th Cir. 2008).  Generally, "in the absence of a legitimate reason to recuse himself, 'a judge should participate in cases assigned.'" Holland, 519 F.3d at 912 (citing United States v. Snyder, 235

3

F.3d 42, 46 (1st Cir. 2000); Maier v. Orr, 758 F.2d 1578, 1583

(Fed. Cir. 1985)).

The Ninth Circuit notes that this duty to participate

flows from a judge's judicial power and is reflected in the

judge's oath to discharge his or her duties and to administer

justice without respect to persons and do equal right to the poor

and to the rich.  Id. at 912 (quoting 28 U.S.C. § 453).  After

all,

> Without this proposition, we could recuse
> ourselves for any reason or no reason at all;
> we could pick and choose our cases,
> abandoning those that we find difficult,
> distasteful, inconvenient or just plain
> boring.  Our mythic Justice, represented by a
> blindfolded figure wielding a balance and a
> sword, hears all cases coming before her,
> giving no preference–whether in priority or
> result–to the station or economic status of
> such persons.

Id.  Of course, a judge may not sit when the judge's impartiality

might reasonably be questioned.  "We are as bound to recuse

ourselves when the law and facts require as we are to hear cases

when there is no reasonable factual basis for recusal. . . .  If

it is a close case, the balance tips in favor of recusal."  Id.

(citations omitted).

In evaluating Joseph's arguments for disqualification,

this judge has the guidance provided by the Supreme Court in

Liteky v. United States, 510 U.S. 540, 554-55 (1994):

4

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

Id. at 555-56 (citation omitted) (emphasis added).

Taking into account the record in this case and the governing law on disqualification, this judge concludes that Joseph does not establish that this judge's impartiality might

reasonably be questioned.  The court denies Joseph's second disqualification motion.

II.        <u>BACKGROUND.</u>

The charges in this case involve allegations that nine Defendants were members of a conspiracy to conduct an illegal gambling business.  Some of the charges assert that several Defendants were competing with other persons to control the lucrative contracts to provide security at various gaming rooms. The dispute over the security contracts allegedly culminated in the murders of two persons and the attempted murder of a third person on a public golf course during daylight hours in January 2004.  Joseph, Motta, and Gonsalves were charged with murder constituting violent crimes in aid of racketeering ("VICAR") under 18 U.S.C. § 1959(a)(1).

The federal charges were not filed until 2006, state charges having been previously filed.  For a time, the state case was very active, but the state case, which remains pending, has now been placed on hold pending the outcome of this federal case.

The focus at the start of this case was on death penalty issues.  After the Government decided not to seek the death penalty, the parties prepared for trial.  This judge presided over extensive evidentiary hearings relating to two motions to suppress, as well as over numerous motions in limine.

A number of Defendants pled guilty, and this judge presided over their sentencing hearings.

Four Defendants were set to be tried beginning on February 12, 2008.  Conscious of the anticipated length of the trial and of the notoriety of the case, this judge had sent out hundreds of juror questionnaires before trial.  Hundreds of jurors were scheduled to come to court for jury selection over several days during the week of February 12, 2008.  Then, on February 11, 2008, all four Defendants entered into plea agreements with the Government.  This judge conducted plea colloquies that went into the evening of February 11, 2008.  During the plea colloquies, this judge informed Joseph, Motta, and Gonsalves that the VICAR murder charges carried a statutory life sentence.  (The fourth Defendant, Kai Ming Wang, was the alleged head of the gambling business but was not charged with murder or attempted murder and thus was not subject to a mandatory life sentence.)

The plea agreements signed by Joseph, Motta, and Gonsalves were entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Rule 11(c)(1)(C) addresses a plea agreement in which the Government agrees "that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or

7

does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."  Fed. R. Crim. P. 11(c)(1)(C).  Joseph and Gonsalves signed plea agreements providing that they would be sentenced to 27.5 years, while Motta agreed to be sentenced to between 240 and 330 months in prison.

This judge accepted the guilty pleas of all four Defendants, deferring until the time of sentencing any decision on whether to accept the plea agreements.

Before the sentencing hearings, Joseph, Motta, and Gonsalves received their draft PSRs.  In accordance with this court's local rules, each Defendant had a chance to object to statements in his respective PSR before this court viewed it. Upon reading the PSRs, the parties belatedly realized that the statutory requirement of life imprisonment on the VICAR murder charges was binding unless the Government, citing substantial assistance by Defendants, moved for lower sentences such as those provided for in the plea agreements.  The Government responded by filing motions that asserted in the most cursory manner imaginable that substantial assistance had been provided.  The motions included no indication of what that purported substantial assistance consisted of.

The sentencing hearings remained on this judge's calendar.  In preparation for those hearings, this judge reviewed the PSRs and the Government's motions.  At no time before or at

8

the sentencing hearings did any Defendant object to this judge's review of those documents in preparation for the sentencing hearings.  At no time before the sentencing hearings did any Defendant move to withdraw his guilty plea.

At the sentencing hearings, it was clear from this judge's statements that this judge had indeed reviewed the PSRs in preparation for the hearings.  This judge proceeded to address the Government's motions, allowing oral argument by the parties. Finding the record devoid of any evidence of substantial assistance, this judge denied the Government's motions, stating that Joseph, Motta, and Gonsalves had not provided information to the Government that had led to the arrest, indictment, or conviction of anyone.  Indeed, Joseph and Gonsalves had express provisions in their plea agreements stating that they could not be required by the Government to testify against anyone else. While they had all pled guilty on the same day, none was claiming to have been the first to decide to plead guilty.  This judge expressed concern that it not recognize a mere guilty plea by a defendant as substantial assistance to the Government.  The motions, if granted, would have saved the plea agreements, but their denial left in place the statutory mandatory life sentences and required this judge's rejection of the plea agreements calling for lower sentences.  In accordance with Rule 11(c)(5) of the Federal Rules of Criminal Procedure, this court gave Joseph,

Motta, and Gonsalves the opportunity to withdraw their guilty

pleas, which all three did.  A new trial date was set for Joseph,

Motta, and Gonsalves.

Gonsalves and the Government subsequently signed

another Memorandum of Plea Agreement.  This new plea agreement

differed from the earlier one by providing (1) that Gonsalves

would plead guilty to an Information that did not include a VICAR

murder charge, and (2) that the Government would dismiss the

charges against Gonsalves in the Second Superseding Indictment.

No charge in the Information carried a mandatory life sentence.

The parties once again agreed to a sentence of 27.5 years.

This judge was anxious to avoid possibly prejudicing

Gonsalves by conducting another plea colloquy, with requisite

sworn admissions by Gonsalves, if it appeared likely that this

judge would reject the new plea agreement.  Accordingly, this

judge articulated to the parties before any plea colloquy all the

concerns this judge had concerning the new plea agreement.  In

particular, this judge expressed concern about whether the

charges in the Information and the proposed sentence of 27.5

years adequately reflected the seriousness of Gonsalves's

conduct.  See U.S. Sentencing Guidelines Manual § 6B1.2.

The court directed the Government and Gonsalves to

submit briefs supporting their assertions that the new charges

and the proposed sentence adequately reflected the seriousness of

Gonsalves's conduct.  The court invited, but stated that it was

not requiring, the parties to include in their briefs details of

what each was giving up or gaining by avoiding trial.  The court

said that these details could be submitted in sealed ex parte

filings in the absence of an adversary's objection.  See Document

Number 891 (Sept. 22, 2008).  The Government and Gonsalves opted

to provide trial details in sealed ex parte filings.  See

Document Numbers 895, 896, and 897.  Following its review of

those filings, this court announced that it was inclined to rule

that the charges in the Information and the proposed sentence of

27.5 years adequately reflected the seriousness of Gonsalves's

conduct.  The court accepted Gonsalves's plea of guilty to the

charges in the Information, later formally accepting the new plea

agreement and sentencing Gonsalves to 27.5 years in prison.  See

Judgment, Document Number 19, filed in United States v.

Gonsalves, Crim. No. 08-576 SOM.

Joseph moved to disqualify this judge, but ultimately

withdrew that motion.  He now renews his disqualification motion,

and Motta joins.

III.    ANALYSIS.

The question about a judge's impartiality that requires

disqualification must usually stem from an extrajudicial source.

Liteky, 510 U.S. at 554-55.  None of the grounds Joseph cites in

his motion or in his supplemental filings has an extrajudicial

source.  To the contrary, Joseph's motion is clearly based entirely on matters occurring in the orderly course of the proceedings in this case.

First, Joseph complains that this judge conducted a plea colloquy in which Joseph pled guilty.  The colloquy was entirely on the record.

Second, Joseph complains that, after this judge accepted his guilty plea, this judge reviewed his PSR in preparation for his sentencing hearing.  This review of the PSR was conducted in the ordinary course, in compliance with all applicable court rules.

Third, Joseph complains that this judge reviewed sealed ex parte filings in connection with Gonsalves's new plea agreements.  These filings, while not available to Joseph, are maintained in the court's case file.

Fourth, Joseph complains that this court made certain statements in the course of sentencing Gonsalves to 27.5 years. These statements were made on the record.

In short, Joseph does not base his disqualification motion on any extrajudicial matter.  Under these circumstances, recusal is not warranted unless this judge has shown "a deep-seated favoritism or antagonism that would make fair judgment impossible."  See id.  This court does not find in

Joseph's papers a claim that this judge has shown such favoritism or antagonism.

Nor does Joseph show that any of the four items his motion cites, or any combination of those items, gives rise to a reasonable question as to this judge's impartiality.

A.   Joseph's Plea Colloquy.

The first item-this court's plea colloquy with Joseph-is different in form but not in content from information judges frequently have before trial.  Admittedly, a Rule 11 guilty plea colloquy is not usually held before a defendant is tried.  But admissions of guilt by a defendant are frequently the basis of motions to suppress, and motions to suppress pretrial statements are certainly common in criminal cases.  In his plea colloquy before this court, Joseph admitted to the elements of the VICAR murder charge, but this no more requires recusal than presentation of evidence of a confession to law enforcement officers would.  Any other rule would mean that any judge ruling on a motion to suppress involving a defendant's pretrial statement would then be disqualified from trying the case.  This would create considerable disruption to the criminal calendar and result in great inefficiency in the handling of criminal cases.

In this very case, Joseph moved to suppress his pretrial statement to Honolulu Police Department officers.  This statement was partially recorded and partially videotaped, and the audio and video recordings were submitted to the court in

connection with Joseph's motion to suppress.  Just as viewing
those submissions does not require recusal, Joseph's plea
colloquy does not require recusal.

Every day, trial judges are presented with information
that they must consciously disregard in later proceedings.  A
judge may grant a motion in limine concerning a defendant's prior
convictions, for example, yet may still try the case.  Knowledge
of a defendant's confession is not distinguishable from that
circumstance for purposes of any disqualification analysis.

This judge is actually surprised that Joseph lists this
first item as a basis for disqualification in his present motion.
This item was listed in Joseph's withdrawn disqualification
motion, and nothing happening after Joseph withdrew his first
motion suggests a reason for Joseph to revive this argument.  The
present motion was presumably filed in light of the Ninth
Circuit's recent Gallaher decision, which did not speak to this
first item at all.

B.   Review of Joseph's PSR.

The second item advanced by Joseph's present motion
concerns this court's review of his PSR in preparation for his
sentencing hearing.  Joseph argues that this court may not
preside over his trial because this court has reviewed his PSR,
which, absent a defendant's consent, should not be examined by a
judge until after conviction, either by plea or by trial.

14

Rule 32(e)(1) of the Federal Rules of Criminal Procedure provides, "Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty."  Joseph reads this rule as prohibiting a trial judge from ever viewing the PSR of a defendant who is to be tried.  The rule does not contain such a blanket prohibition. The rule instead only prohibits a judge's review of a PSR before a defendant has been judged guilty.  Joseph pled guilty before this judge, and this judge accepted that guilty plea.  A sentencing hearing was scheduled, and it was only after accepting Joseph's guilty plea and while preparing for the sentencing hearing that this judge reviewed the PSR.  This was entirely consistent with Rule 32.

In its recent decision in In re Gallaher, 548 F.3d 713 (9th Cir. 2008), the Ninth Circuit construed Rule 32 in the context of a murder case in which the defendant attempted to enter a guilty plea pursuant to a plea agreement.  In the plea agreement, the defendant reserved the right to appeal the district court's earlier denial of his motion to dismiss the indictment.  It was the Gallaher decision that prompted this judge to invite the parties to review their decision not to seek disqualification.  In issuing this invitation, this judge did not

15

intend to signal a decision to recuse.  Rather, this judge was intent on ensuring that all issues received thorough consideration.

In the <u>Gallaher</u> case, the district judge conducted a Rule 11 colloquy but refrained from deciding whether to accept the guilty plea.  The district court instead said it wanted to review the PSR and then decide whether to accept the guilty plea or not.  A sentencing hearing was scheduled, and a PSR was prepared and reviewed by the district judge.  At the sentencing hearing, the district court said that it was not accepting the guilty plea.  The Ninth Circuit, examining Rule 32 and cases construing the rule, concluded that the district court's review of the PSR "was premature and in error."  Expressly noting "the preliminary nature" of plea proceedings and finding that "the minimal potential for waste or duplication of judicial resources is outweighed by the need to proceed in a manner that preserves the appearance of justice," the Ninth Circuit remanded the case for reassignment to a new judge to consider whether to accept the defendant's conditional plea.  <u>Id.</u> (quoting <u>In re Ellis</u>, 356 F.3d 1198, 1211 (9th Cir. 2004)(en banc)).

<u>Gallaher</u> is inapposite.  In that case, the district court reviewed the PSR before accepting a guilty plea.  In contrast, this judge accepted Joseph's guilty plea before reviewing Joseph's PSR.  This judge's review of Joseph's PSR was

16

in full compliance with Rule 32.  Joseph's later withdrawal of
his guilty plea did not convert that entirely proper review into
a violation of Rule 32.  To rule otherwise would be to require
recusal whenever a defendant withdraws his guilty plea after he
and the court have reviewed a PSR.  As motions to withdraw guilty
pleas are often triggered by reviews of sentencing guideline
calculations in PSRs, it is likely that many guilty plea
withdrawals would require recusal if Joseph's position were
adopted.

Similarly, if a conviction were reversed on appeal and
a new trial ordered, Joseph's position would require reassignment
to a new district judge, as the original judge would have
reviewed the PSR in connection with sentencing the defendant.
Yet, reassignment is the exception, not the rule, following
reversal.  As the Supreme Court notes, "It has long been regarded
as normal and proper for a judge to sit in the same case upon its
remand, and to sit in successive trials involving the same
defendant."  Liteky, 510 U.S. at 551.

Clearly, if a judge has conducted extensive proceedings
in a case, the potential for waste or duplication of judicial
resources is a larger consideration than it was in Gallaher.  See
Gallaher, 548 F.3d at 718 (referring to the "preliminary nature"
of the proceedings in that case).  This judge has conducted
numerous hearings in this case, has considered and ruled on many

17

complex issues, and has spent a great deal of time on this case. While this is hardly the kind of case that any judge would covet or insist on presiding over in the face of a valid recusal issue, this judge will not lightly avoid her duty and thereby waste considerable judicial resources.

Joseph's citation of _Gregg v. United States_, 394 U.S. 489 (1969), and _Ellis_, 356 F.3d 1198, is unavailing.  Neither of those cases stands for the broad proposition that any review of a PSR before trial requires disqualification.

In _Gregg_, the Supreme Court noted that, pursuant to Rule 32, a judge should not view a PSR "unless the defendant has pleaded guilty or has been found guilty."  _Id._ at 491 (quoting Rule 32).  The Court reasoned that, because there are no formal limitations on the contents of PSRs, they may contain hearsay and information with no bearing on the charge against the defendant. The trial judge should not have such information, which might prejudice him before a conviction.  _Id._ at 492.  _Ellis_, 356 F.3d at 1205, similarly ruled that, under Rule 32, a trial judge should not view a PSR prior to a conviction.  However, neither _Gregg_ nor _Ellis_ involved a case in which a district judge reviewed a PSR after a defendant was found guilty, only to have that conviction withdrawn or otherwise vacated.

As _Ellis_ points out, under Rule 32, a district judge properly views a PSR after a defendant pleads guilty or, even if

18

the defendant has not pled guilty, if the defendant consents in writing.  356 F.3d at 1214.  In a case in which a defendant has consented, the judge has reviewed a PSR, and the judge has then rejected a plea agreement, it would defy reason that a defendant could move to disqualify the judge on the ground that the judge had viewed the PSR before trial.  Because viewing a PSR after accepting a guilty plea is as permissible under Rule 32 as viewing a PSR with a defendant's consent, it similarly defies reason that a defendant who withdraws his guilty plea has a ground to disqualify the judge.

Notably, Joseph does not identify any particular matter in his PSR that creates prejudice.  Because this judge did not violate Rule 32, this judge's review of the PSR should not be a disqualifying event in the absence of some showing of prejudice flowing from the review of the PSR.  Much of the information in a PSR is presented to a trial judge in other contexts.  A trial judge may, for example, learn of a defendant's prior convictions through a motion in limine, or may learn of family circumstances in connection with bail proceedings, such as an appeal from a magistrate judge's bail ruling.  In the present case, for example, Motta filed a motion asking to be released from prison to visit his ailing father.  In considering such a motion, a trial judge would typically review all manner of family or personal information that might later be included in a PSR.

19

Joseph and Motta do not point to any information in their PSRs that was not otherwise presented to this judge and that somehow prejudices them at this juncture.

Neither the law nor the facts in this case make this judge's review of the PSR a reason for this judge to step down from this case.

C.   <u>Sealed Filings Relating to Gonsalves's Plea.</u>

The third basis of Joseph's motion concerns this court's receipt of sealed <u>ex parte</u> filings by the Government and Gonsalves relating to Gonsalves's new plea agreement. Although this judge will certainly not disclose the contents of those filings, this judge does not think she is violating the sealed nature of the Government's filing by saying that it does not contain material likely to be the subject of or to affect any evidentiary or other ruling by the court, whether before, during, or after trial.  In paragraph 4 of his counsel's declaration, Joseph speculates that the Government's filing outlines weaknesses in the Government's case "in order to 'justify' a sentence of less than a mandatory life term."  Even if this is so, this judge has difficulty seeing how Joseph is prejudiced by the purported disclosure of weaknesses in his opponent's case.

Joseph also speculates that Gonsalves's filing disclosed confidential matters relevant to a joint defense by Joseph, Motta, and Gonsalves.  Again, while cognizant of the need

to protect the content of Gonsalves's sealed filing, this judge
does not believe she is out of line in stating that she does not
read Gonsalves's filing as relevant to Joseph or Motta.

This judge earlier expressly recognized that
disqualification might be appropriate if, after reviewing ex
parte filings by the Government and Gonsalves, she rejected the
new Gonsalves plea agreement.  This judge did not reject the new
Gonsalves plea agreement and sees nothing in those filings
requiring disqualification from the trial of Joseph or Motta.

Joseph and Motta, of course, were well aware that
Gonsalves had entered into a new plea agreement, and that sealed
ex parte briefs might be filed by the Government and Gonsalves in
connection with this judge's consideration of that new plea
agreement.  This judge's order of September 22, 2008, concerning
those briefs was served on the attorneys representing Joseph and
Motta.  Yet, neither Joseph nor Motta objected to the procedure
at the time.

It was not until after the briefs had been filed by the
Government and Gonsalves and nearly a month had passed since the
order was served on counsel for Joseph and Motta that Joseph
filed his first disqualification motion, which included a
challenge to this judge based on the sealed ex parte filings.
Motta did not join in that motion, instead stating that he was
not seeking this judge's disqualification.  Joseph ultimately

withdrew that first disqualification motion.  He raises the issue

of the sealed _ex parte_ filings in this second disqualification

motion without identifying anything occurring after his

withdrawal of his first disqualification motion.  The court is

thus at a loss to see what now justifies Joseph's reliance on

this previously withdrawn ground.  In pointing out the recent

_Gallaher_ decision to the parties, this judge was prepared for a

renewed discussion of the PSR issue, not for a resurrection of

matters previously withdrawn and not affected by _Gallaher_.

Boldly asserting this argument about sealed _ex parte_ filings in

the present motion, Joseph does not even pretend to have a reason

for doing so at this time.

        D.   _Sentencing of Gonsalves._

       In a supplemental filing on December 23, 2008, Joseph

argues that this judge should recuse herself based on comments

she made while sentencing Gonsalves.  Specifically, Joseph points

to this judge's description of Joseph as more of a "soldier" than

Joseph or Motta and to comments about premeditation and the lack

of justification for the killings.  In making such comments, this

judge was following its usual practice of explaining her

sentence.  This judge wanted to make clear both why 27.5 years

was not too lenient a sentence as well as why it was not too

harsh.

Nothing this judge said during Gonsalves's sentencing hearing came from extrajudicial sources.  Nor did the comments about Gonsalves's role, about premeditation, and about the lack of justification result from this judge's review of any sealed filing.  Those comments reflected this judge's view of evidence that was freely available in the public record.  Not only did this judge conduct extensive suppression proceedings, including a suppression hearing at which Gonsalves himself testified, this judge had Gonsalves's new plea agreement.  Gonsalves's role was reflected, for example, in paragraph 8(f) of the new plea agreement, which referred to "the security doormen who were working under co-defendants JOSEPH and Motta," and discussed an intent "to replace JOSEPH and Motta as the security bosses." Paragraph 8(f) also mentioned replacing "many of the non-Samoan doormen, including GONSALVES."  Thus, in describing Gonsalves as having more of a "soldier's role" than Joseph and Motta, this court was not on its own defining a role for Gonsalves.  Rather, this judge was relying on the parties' agreement.

It is unclear to the court what prejudice Joseph or Motta could possibly sustain from this judge's comments on Gonsalves's role.  Whether Gonsalves was a "soldier" or in the same position as Joseph or Motta does not affect the issue of whether Joseph or Motta is not guilty or guilty.  At most, the issue of whether Gonsalves was a "soldier" could affect

23

sentencing.  But if found not guilty at trial, Joseph and Motta will not face sentencing.  If found guilty of the VICAR murder charges, Joseph and Motta will be subject to a statutory sentence of life in prison, and this judge will have no discretion as to sentencing.  In either event, this judge's view of Gonsalves as more of a "soldier" cannot affect Joseph or Motta.

Similarly, the references to premeditation and the unprovoked killings were consistent with paragraph 8(h) of the plea agreement signed by the Government and Gonsalves, as well as with the PSR and other information provided to the court that is in the publicly available record.

In raising the issue of this judge's comments on premeditation and the unprovoked nature of the killings, Joseph and Motta appear to be suggesting that their defense at trial may be based on a self-defense theory.  However, they have not clearly stated that they will indeed be claiming self-defense. Of course, they need not announce before trial a self-defense or other theory, but, if they do not claim self-defense, then it is difficult to see how this judge's comments are even relevant to their defense.  At this point, they are vaguely suggesting some sort of prejudice without committing to the theory of any defense that might be even tenuously connected to this judge's comments.

The bottom line is that no appearance of impropriety arises when a judge has knowledge about the facts of a case

24

before trial.  It is normal for that to occur given pretrial proceedings.  Joseph and Motta do not argue or imply that any statement this judge made at Gonsalves's sentencing hearing was inaccurate.

Joseph appears to be arguing that a judge must be a "blank slate" going into a trial.  Such a requirement would mean that every time a judge ruled on a motion, a new judge would have to be assigned to the case, as nearly every motion provides a judge with some factual material about the case.  This is clearly not the law.

Taken to its logical conclusion, Joseph's argument would mean that a judge should never sentence a co-defendant before remaining defendants are tried.  If one defendant is sentenced while others await trial, the judge will review that defendant's PSR and learn facts about the case.  The PSR may well describe actions allegedly taken by remaining parties.  The judge will be required to state the reasons for the sentence, which may well include evaluations of a defendant's role in the offense or a lack of justification for his actions.  Preventing a judge from sentencing a defendant who has pled guilty just because other defendants have not yet been tried could severely prejudice the defendant who has pled.  In the present case, for example, Kai Ming Wang pled guilty and was sentenced to time served.  In preparation for Wang's sentencing hearing, this judge did indeed

25

review a PSR that described alleged actions by Joseph and Motta. Had this judge not sentenced Wang, he would still be in prison instead of back in his home country.  It is neither sensible nor fair to other defendants to require a judge to remain a "blank slate" for the purported benefit of those defendants who go to trial.

This court is not persuaded by Joseph's citation to In re Vasquez-Ramirez, 443 F.3d 692 (9th Cir. 2006), a case that did not involve a disqualification motion pursuant to § 455(a).  The district judge in that case declined to accept a guilty plea, noting that, given the defendant's criminal history, he could not, in good conscience, sentence the defendant to the 30-month prison term provided for in the plea agreement.  The judge told the parties that he would not grant any motion by the Government to dismiss the most serious charges in the indictment, even though the judge did not appear to have a basis for denying such a motion.  Noting the distinction between a district judge's acceptance of a guilty plea and the acceptance of a plea agreement, the Ninth Circuit stated that the district judge lacked discretion to reject the guilty plea once the plea met the requirements of Rule 11.  The Ninth Circuit granted the defendant's mandamus petition and directed that the case be returned to the district court and that a new judge be assigned. Id.  That case bears no resemblance to the present case.  This

judge did not decline to accept a guilty plea that it was bound to accept.

Nor is the court persuaded by Joseph's reliance on In re Ellis, 356 F.3d 1198 (9th Cir. 2004) (en banc).  On appeal, Ellis had asked the Ninth Circuit to reassign the case to a different judge on remand.  The Ninth Circuit identified two inquiries relating to reassignment.  First, it examined whether the district judge had "exhibited personal bias requiring recusal from a case."  Second, in the absence of personal bias, the court examined whether unusual circumstances warranted reassignment.  The Ninth Circuit stated that the second inquiry involved three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,
> (2) whether reassignment is advisable to preserve the appearance of justice, and
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

Id. at 1211.  The Ninth Circuit noted that only one of the first two factors had to be present to support reassignment.

Even if this disqualification motion could be said to be governed by the reassignment standard set forth in Ellis, Joseph fails to establish that another judge should oversee this matter.  Because Joseph does not identify a personal bias by this

27

judge, only unusual circumstances warrant reassignment.  Those circumstances are lacking.  This court has not "previously expressed views or findings determined to be erroneous or based on evidence that must be rejected."  Accordingly, reassignment must be based on whether reassignment "is advisable to preserve the appearance of justice."  Id.  For the reasons addressed earlier in this order, Joseph does not satisfy that standard.  Even if Joseph did show that disqualification was advisable to preserve the appearance of justice, this is a case in which consideration of the third factor (waste and duplication out of proportion to any gain in preserving the appearance of fairness) would clearly be appropriate.

Finally, this judge addresses the position taken by Motta.  Motta says he is concerned that any potential juror who has read news reports of statements this judge made while sentencing Gonsalves "would be of the opinion that Judge Mollway has made findings of fact regarding potential self-defense claims on the part of Defendant[s] Rodney Joseph and Ethan Motta."  Motta continues, "absent a ruling disqualifying each and every potential juror who indicates viewing any such news reports, counsel feels compelled to join with Defendant Rodney Joseph's Motion to Disqualify the Honorable Susan Oki Mollway."

Motta's position makes no sense.  The jury selection process is designed to determine whether a particular prospective

juror will be fair and impartial.  This court will not agree to disqualify every juror who has viewed a news report without first inquiring about what that juror heard or saw and how that affects that juror.  This judge also will provide preliminary instructions to the jurors, and even jurors who start out with misimpressions can serve if those misimpressions are properly dispelled.

This trial is projected to last six to eight weeks, and it may be difficult to find jurors able to serve that long. There is no reason for this court to enter into a bargain with Motta to throw out jurors without inquiry, just to induce Motta not to seek this judge's disqualification.  Indeed, this judge finds it strange that Motta seeks this judge's disqualification on the ground that jurors may misunderstand news reports.  Motta does not even contend that the news reports in issue were incorrect!  There is absolutely no authority supporting a juror's possible misunderstanding of a news report as a legitimate basis for a judge's disqualification.

IV.       <u>CONCLUSION.</u>

The court denies Joseph's second motion to disqualify this judge.  To the extent Motta joins in the motion, the court also denies Motta's request.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2008.




                        <u>/s/ Susan Oki Mollway</u>
                        Susan Oki Mollway
                        United States District Judge


<u>United States v. Joseph</u>, Crim. No. 06-00080 SOM (02); ORDER DENYING RODNEY JOSEPH'S SECOND MOTION TO DISQUALIFY THIS JUDGE (DOCKET NUMBER 936)