IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 06-00080 (02) SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTIONS UNDER |
| vs. | ) | 28 U.S.C. § 2255, ECF NOS. |
| | ) | 1466, 1475, and 1509; |
| RODNEY JOSEPH, JR. (02), | ) | EXHIBIT A |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTIONS UNDER 28 U.S.C. § 2255,
ECF NOS. 1466, 1475, and 1509**

**I.        INTRODUCTION.**

On March 20, 2009, after a lengthy jury trial,
Defendant Rodney Joseph, Jr., was convicted of violating the
Racketeer Influenced and Corrupt Organizations Act ("RICO") and
the Violent Crimes in Aid of Racketeering Enterprise Act
("VICAR"), as charged in seven separate counts in the Second
Superseding Indictment of October 12, 2006. See Verdict Form as
to Defendant (02) Rodney Joseph, Jr., (March 20, 2009), ECF No.
1090.  Joseph's crimes included a substantive RICO violation of
18 U.S.C. § 1962(c), with racketeering acts in the form of an
illegal gambling business, an extortion conspiracy, and robbery
(Count 1); a RICO conspiracy in violation of 18 U.S.C. § 1962(c)
(Count 2); a conspiracy to operate an illegal gambling business
in violation of 18 U.S.C. §§ 2 and 1955 (Count 3); a VICAR
violation in the form of an assault with a dangerous weapon in
violation of 18 U.S.C. § 1959(a)(3) and 2 (Count 4); a VICAR

violation in the form of the murder of Lepo Taliese in violation of 18 U.S.C. § 1959(a)(1) and 2 (Count 6); a VICAR violation in the form of the murder of Romelius Corpuz, Jr., in violation of 18 U.S.C. § 1959(a)(1) and 2 (Count 7); and a VICAR violation in the form of the attempted murder of Tinoimalo Sao in violation of 18 U.S.C. § 1959(a)(5) and 2 (Count 8). <u>Id.</u>

On July 9, 2009, the court sentenced Joseph to life imprisonment as to Counts 6 and 7, as statutorily required; 20 years' imprisonment as to Counts 1, 2, and 4; 5 years' imprisonment as to Count 3; and 10 years' imprisonment as to Count 8. The court ran all terms concurrently. <u>See</u> ECF No. 1157. Although sentencing Joseph to life imprisonment, the court also ordered 5 years of supervised release in case that should become applicable. <u>Id.</u> The court additionally ordered Joseph to pay restitution of $5,552.68 to the family of Lepo Taliese, $5,552.68 to the family of Romelius Corpuz, Jr., and $8,000 to the State of Hawaii Crime Victim Compensation Commission. This restitution was owed jointly and severally with co-Defendants Ethan Motta and Kevin Gonsalves. <u>Id.</u> The court also ordered Joseph to pay $700 in mandatory special assessments, $100 for each count of conviction. <u>Id.</u>

On July 10, 2009, Joseph appealed. <u>See</u> ECF No. 1159. The Ninth Circuit affirmed the judgment in a Memorandum Decision filed on January 10, 2012. <u>See</u> ECF No. 1341. Since then, Joseph

2

has filed countless motions, including the ones presently before this court, which are 1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1466; 2) Combined Motions to Vacate the Judgement, ECF No. 1475; and 3) Combined Motions for Bartkus vs. Illinois Evidentiary Hearing on Double Jeopardy Grounds, ECF No. 1509. The court treats these motions as a single § 2255 petition.  The court denies all of these motions without a hearing and declines to issue a certificate of appealability.

II.        ANALYSIS.

        A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  There are restrictions on what claims can and cannot be raised in a § 2255 petition.

        For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal,

3

appellant cannot now seek to relitigate it as part of a petition under § 2255."

When a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising the issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973). To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

Some of Joseph's claims are couched as ineffective assistance of counsel claims, even though most of his claims

4

raise issues that could have been raised earlier.  To establish
ineffective assistance of counsel, Joseph must show that (1) his
counsel's performance was deficient, and (2) the deficient
performance prejudiced his defense.  Strickland v. Washington,
466 U.S. 668, 687 (1984).  There is "a strong presumption" that
counsel's conduct was reasonable and that counsel's
representation did not fall below "an objective standard of
reasonableness" under "prevailing professional norms."  Id. at
688.  Even if a petitioner can overcome the presumption of
effectiveness, the petitioner must still demonstrate a
"reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. at 694.  Because "[i]t is all too tempting for a defendant to
second-guess counsel's assistance after conviction," judicial
scrutiny of counsel's performance is highly deferential.  Id. at
689.

> **A.   Joseph's Request for Appointment of Counsel is Denied.**

Joseph requests appointment of counsel to pursue this
§ 2255 motion, arguing that he should get new counsel because his
old counsel withdrew after he asserted his ineffective assistance
of counsel claims.  See ECF No. 1509, PageID # 15837.  That
request is denied.

Under 18 U.S.C. § 3006A(g), counsel may be appointed for an impoverished habeas petitioner whenever "the court determines that the interests of justice so require . . . ." Such appointment of counsel becomes mandatory when an evidentiary hearing is required. <u>Bashor v. Risley</u>, 730 F.2d 1228, 1233 (9th Cir. 1984). As discussed below, an evidentiary hearing is not required here.

The court exercises its discretion in declining to appoint counsel under the circumstances presented here, as the appointment of an attorney would not make a difference in the result. For the most part, Joseph has failed to identify the factual bases supporting his arguments. Without factual support, no attorney could make a better case for Joseph. To the extent Joseph seeks to reassert issues already rejected on direct appeal, no attorney could get Joseph a better result. Finally, to the extent Joseph is asserting claims that he procedurally defaulted on, no attorney could succeed in asserting those claims.

The court notes that it has been and will be giving Joseph leniency as a pro se litigant. However, this leniency does not forgive the various procedural bars discussed below.

6

## B.  Joseph is Procedurally Barred From Claiming that the Government Failed to Disclose Favorable Evidence.

Joseph argues that the Government failed to disclose to him favorable evidence that he could have used to impeach various Government agents.  See ECF No. 1466, PageID #s 15255 and 15256. Joseph does not identify what this evidence is such that the claim could be evaluated.  To the extent he bases this argument on the same allegedly undisclosed evidence that was raised on direct appeal, Joseph is procedurally barred from making the claim.  See Olney, 433 F.2d at 162.  On Joseph's direct appeal, the Ninth Circuit ruled:

> The United States did not violate Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose potential impeachment evidence regarding three government witnesses. Assuming arguendo that the government was required to disclose the evidence, the witnesses' testimony was cumulative of other evidence, and so would not have "created a 'reasonable probability of a different result.'" United States v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

ECF No. 1341, PageID # 13480.

To the extent Joseph is basing this argument on other evidence not discussed on appeal, Joseph has procedurally defaulted on the argument, as he fails to demonstrate that

7

<u>Frady</u>'s "cause" and "prejudice" excuse his failure to raise the issue earlier.

> ### C.    Joseph is Procedurally Barred From Raising His Actual Innocence Claim.

Joseph argues that he is innocent of the charges.   <u>See</u> ECF No. 1509, PageID #15850.   Joseph, however, does not clearly explain what facts this claim is based on.   To the extent the argument is based on issues already raised and decided on direct appeal, Joseph is procedurally barred from raising the issues in this § 2255 motion.   <u>See</u> <u>Olney</u>, 433 F.2d at 162.

On direct appeal, the Ninth Circuit ruled that there was sufficient evidence to support Joseph's convictions, stating,

> 12.   There was sufficient evidence of an "enterprise" under the RICO and VICAR statutes to support the jury's verdicts. . . . The evidence showed that Joseph and Motta were part of a group of individuals who together operated and profited from illegal gambling. . . .
>
> 13.   The trial evidence established that Motta and Joseph conducted the affairs of an enterprise through a "pattern of racketeering activity" under the RICO statute.   The evidence showed that (1) Joseph and Motta committed two racketeering acts (assisting in the operation of an illegal gambling business, and extorting owners of a competing business), and Joseph committed the third act of robbery; (2) these acts were related by virtue of their common purpose (to enrich Joseph, Motta, and others); and (3) the acts were "continuous" because they existed over

8

many months and "pose[d] a threat of
continued criminal activity." . . .

14.   There was sufficient evidence to support
the jury's verdict that Joseph was guilty of
an assault with a dangerous weapon in aid of
racketeering.   The evidence showed that
Joseph and other men held the patrons of a
competing game room at gunpoint and robbed
them in violation of Hawaii's armed robbery
statute, Haw. Rev. Stat. § 708-840.

ECF No. 1341, PageID #s 13480-81.

Joseph cannot now make these same arguments, having

failed to prevail on them on direct appeal.   See Olney, 433 F.2d

at 162.

Joseph also argues that new evidence regarding his

"self-defense" claim was just discovered.   He says that there was

a rope found in a victim's vehicle and a weapon found in the

backpack of a victim that Joseph believes would have been used to

bind him and hurt him.   Joseph procedurally defaulted on this

claim.   Joseph fails to explain why he or his attorney did not

know about this alleged evidence.   Even if he could satisfy

Frady's "cause" requirement, he still fails to demonstrate

prejudice.   Overwhelming evidence was introduced at trial

indicating that the shooting was not in self-defense.

For example, Tinoimalo Sao testified that, after he got

out of his van, he went to shake Joseph's hand, but

Joseph kept his hands in his pocket.  Sao then walked over to Motta.  Transcript of Proceedings at 12-42, Feb.2 5, 2009, PageID # 10518; Transcript of Proceedings at 13-46 to 13-47, March 3, 2009, ECF No. 1245, PageID # 10691-92.  Sao testified that he hugged Motta, turned around, then was shot by Motta.  Id. at 13-48, PageID # 10693.  Sao further testified that he heard Motta tell Joseph to "Shoot 'em," and that Joseph shot Lepo Taliese. See Transcript of Proceedings at 12-6 and 12-45, Feb. 25, 2009, PageID # 10482 and 10521.  Sao conceded on cross-examination that he had earlier said that Motta told Kevin Gonsalves to "Shoot 'em."  Id. at 12-57, PageID # 10533.  Sao testified, however, that he also heard Joseph say, "Shoot 'em, Kev."  Id. at 12-63, PageID # 10539.

Motta testified at trial that, when Sao hugged him, Sao looked to the left and to the right.  Motta says that he then saw a truck with a bunch of guys in it "coming."  See Transcript of Proceedings at 14-48, March 4, 2014, ECF No. 1246, PageID # 10899.  Motta said that, at the time, Taliese had a black handbag in his hands.  Id. at 14-49, PageID # 10900.  He says that he then ran to his car, got a gun that Joseph had put on the seat, then fired it.  Id. at 14-50 to 14-51, PageID # 10901-02.

Joseph did not testify at trial.

10

The presence of a rope in the victim's van or of the weapon in a bag may demonstrate that Motta was correct in fearing for his own safety.  But the items, having been unknown to Motta or Joseph at the time, do not themselves indicate that Joseph acted in self-defense.  Joseph fails to show that the absence at trial of this "new evidence" worked to his actual and substantial disadvantage.  See Frady, 456 U.S. at 170.  It would be pure speculation to posit that the "new evidence" would have changed the jury's verdict, as neither Joseph nor Motta could have acted in response to this evidence when shooting the victims.

D.   **Joseph Procedurally Defaulted With Respect to his "Double Jeopardy" Claims.**

Joseph argues that his double jeopardy rights were violated when, after being initially indicted in state court, he was subsequently indicted and tried in federal court on related crimes.  Joseph claims that the federal Government improperly requested and received a writ of habeas corpus ad prosequendum to transfer the jurisdiction for prosecution from state court to this court.  See ECF No. 1509, PageID #s 15839-49.  Without really raising a double jeopardy claim (as jeopardy had not attached in state court), Joseph appears to be claiming that federal prosecutors improperly influenced state-court criminal proceedings by commanding the state court to transfer custody of

11

Joseph to the United States Marshal so that Joseph could be prosecuted in federal court, in violation of <u>Wilson v. Schnettler</u>, 365 U.S. 381 (1961).  In that case, the Supreme Court noted that federal courts should not use their discretionary power to interfere with threatened proceedings in state courts, except in exceptional circumstances.  <u>Id.</u> at 385.

　　　　Without any evidentiary support, Joseph argues that the state prosecution was no more than a tool for the federal Government, as evidenced by the writ to transfer him to federal custody.  Joseph also argues that his double jeopardy rights were violated by the imposition of seven $100 special assessments, one for each count for which he was convicted.  Because Joseph did not raise these issues earlier with this court or on appeal, the claims are procedurally barred unless he can satisfy <u>Frady</u>'s "cause" and "actual prejudice" requirements.  <u>See</u> <u>Frady</u>, 456 U.S. at 167-68.  Nor is the argument about the special assessments at all clear to this court.  To the extent Joseph is arguing that the assessments bar the Government from seeking a prison term, this court knows of no authority to that effect.

1.    **Joseph Procedurally Defaulted on His Claim Based on the Writ of Habeas Corpus Ad Prosequendum.**

This court issued a writ of habeas corpus ad prosequendum that commanded the Interim Director of the Department of Public Safety, State of Hawaii, to produce Joseph to face the charges in this case.  See ECF Nos. 7 and 8.  In claiming a "double jeopardy" violation, Joseph argues that the Government improperly influenced the state-court proceedings via the writ.  See ECF No. 1509, PageID #s 15839-49.  Because Joseph fails to establish Frady's "cause" and "actual prejudice," he procedurally defaulted on this claim by failing to raise it earlier.

Joseph contends that double jeopardy claims cannot be the subject of a procedural default.  See PageId #15840.  But his citations do not stand for that proposition.  To the contrary, the court has found no governing authority prohibiting the application of procedural default jurisprudence to double jeopardy claims.  See, e.g., United States v. Challoner, 583 F.3d 745, 750 (10th Cir. 2009) (holding that the district court correctly ruled that the defendant's double jeopardy claim was procedurally barred).

13

Joseph next contends that his failure to raise his double jeopardy claim based on the allegedly improper writ of habeas corpus ad prosequendum should be excused because the Government applied for the writ on an ex parte basis.  See ECF No. 1509, PageID # 15838.  However, the application, although sealed, was clearly evident on the docket sheet.  Joseph certainly had access to facts from which he could have known of the existence of the writ.  Joseph therefore fails to demonstrate "cause" for having failed to raise the issue earlier.

Even if Joseph's delay in raising the issue was excused, he does not establish prejudice.  Joseph claims that the Government obtained the writ "upon false and manufactured evidence engineered by the FBI under allegations that Defendant was bribing the state judge in Hawaii in order to get favorable judgments in Defendant's case."  ECF No. 1509, PageID # 15841. But the "Application and Order for Writ of Habeas Corpus Ad Prosequendum" does not mention anything concerning the bribing of a judge at all.  See ECF No. 7.  In other words, the writ was not issued based on "false and manufactured evidence" to that effect, as no such evidence was submitted to any court in connection with the writ.  A suggestion relating to an alleged (but never proved) relationship between Motta and a state-court judge was raised by

14

a witness during trial, see Testimony of Jonnaven Monolim, March 6, 2009, ECF No. 1248 at 16-37, PageID # 11175, but that suggestion was made after the writ had issued.  Joseph therefore fails to establish prejudice, because he provides no factual basis for his claim.

Joseph misreads Strand v. Schmittroth, 251 F.2d 590 (9th Cir. 1957).  See ECF No. 1509, PageID #s 15841-42.  That case does not stand for the proposition that the writ had to have been directed to the "Hawaii state judicial branch," instead of to the Interim Director of the Department of Public Safety, State of Hawaii.  Nothing in the record indicates that the "Hawaii state judicial branch" had custody of Joseph at the time.  Strand rejected a claim by the federal government that, while a person was on parole, he could not be tried in state court.  In reaching its holding, the court stated:

> It is well established that a sovereign, which has the paramount right to proceed with trial and sentence and which at the same time has custody of a defendant, may yield up the body to another sovereign and consent to trial of the defendant upon a subsequent charge by the latter and, of course, upon a prior charge.  Likewise, where the defendant in a proceeding in a tribunal is a parolee, probationer or on bail from another jurisdiction and court, the sovereign in whose court the right to proceed is lodged by possession of the body or otherwise may

nevertheless yield to the officers of another
sovereign.

Id. at 595.

Strand therefore supports the State of Hawaii's
agreement to Joseph's trial for the RICO and VICAR crimes in
federal court, rather than his trial on state charges in state
court.  In other words, even though Hawaii officials were already
in the process of prosecuting Joseph in state court, that did not
mean that the state court could not defer to the subsequent
prosecution in this court.  Neither Joseph's bald accusation that
the FBI manufactured evidence nor his speculation as to what
motivated the federal charges demonstrates the "actual prejudice"
necessary to excuse his procedural default with respect to the
matter.

> ## 2. Joseph Procedurally Defaulted on His Claim That the Seven Special Assessments Amounted To Multiple Punishments For the Same Crime.

Joseph argues that his double jeopardy rights were
violated when he was subject to seven separate $100 special
assessments (one for each count of conviction) while being
required to serve concurrent prison terms.  See ECF No. 1466,
PageID # 15257-15260; ECF No. 1475, PageID #s 15284-15288; and
ECF No. 1509, PageID #s 15849-50.  Joseph clearly misunderstands

the law in this area, but, even if that were not so, he has procedurally defaulted on the claim.

Joseph certainly knew about the seven $100 special assessments at the time he was sentenced and could have raised his argument at that time or on appeal.  He therefore fails to establish <u>Frady</u>'s "cause" requirement.

Joseph also fails to establish prejudice with respect to the seven $100 special assessments imposed on him.  Pursuant to 18 U.S.C. § 3013(a)(2)(A), the court "shall assess on any person convicted of an offense against the United States . . . the amount of $100 if the defendant is an individual."  In <u>United States v. Hayes</u>, 385 F.3d 1226, 1228 (9th Cir. 2004), the Ninth Circuit recognized that special assessments "are fixed amounts that courts impose on each count of a conviction."  The Supreme Court has noted that "§ 3013 requires a federal district court to impose a . . . special assessment for every conviction." <u>Rutledge v. United States</u>, 517 U.S. 292, 301 (1996).

<u>Rutledge</u> provides guidance here.  In <u>Rutledge</u>, the Supreme Court reiterated the long-standing principle that a person cannot be punished twice for the same crime.  Accordingly, when a defendant sentenced to concurrent terms of imprisonment is required to pay a special assessment for each multiplicitous

17

felony count, those terms and assessments result in multiple
punishments for the same crime.  See Rutledge, 517 U.S. at 301.7
Joseph, by contrast, was not convicted of multiplicitous counts
(i.e., counts involving the same crime).  He therefore fails to
demonstrate any double jeopardy issue with respect to the
multiple special assessments.  See id. at 297-303; see also
United States v. Christner, 66 F.3d 922, 927-30 (8th Cir. 1995)
(noting that a defendant may not be sentenced to special
assessments for each count when multiple counts charge a single
offense, but holding that the indictment in question was not
multiplicitous).  Joseph therefore fails to demonstrate the
prejudice necessary to excuse his procedural default on this
issue.

     To the extent Joseph argues that he has satisfied the
judgment by paying the seven special assessments such that he
should be released from his life term of imprisonment, see ECF
No. 1466, PageID # 15258; and ECF No. 1475, PageId #s 15286-87,
he similarly fails to establish Frady's "cause" or "prejudice."
In any event, there is no authority supporting that contention,
and a plain reading of the judgment indicates that Joseph does
not satisfy the judgment by complying with only a portion of it.

E.   **Joseph's Counsel Was Not Ineffective in Failing To Make the Double Jeopardy Argument That the Seven Special Assessments Amounted to Multiple Punishments For the Same Crime.**

To the extent Joseph argues that his counsel was ineffective in failing to make the argument that the seven special assessments amounted to multiple punishments for the same crime in violation of his double jeopardy rights, see ECF No. 1475, PageID # 15288, Joseph fails to demonstrate that his counsel's performance was deficient or that the allegedly deficient performance prejudiced him.  See Strickland, 466 U.S. at 687.  As discussed above, Joseph fails to demonstrate that any of his convictions involved the same crime.  Accordingly, he fails to demonstrate the factual predicate for his claim that he was punished more than once for the same crime.  Under these circumstances, his counsel was not ineffective in failing to make an unmeritorious argument, and Joseph could not possibly have been prejudiced by that failure.

F.   **Joseph's Counsel Was Not Ineffective in Allegedly Failing To Impeach Government Witnesses.**

Without any further explanation or factual support, Joseph argues, "Counsel failed to investigate and to otherwise obtain evidence that could have been used to impeach multiple government witnesses.  Counsel also failed to impeach witnesses

19

where the government did provide evidence that could have been used to impeach such witnesses." ECF No. 1466, PageID # 15255. Even assuming these bald claims are true, Joseph does not demonstrate how he was possibly prejudiced such that his counsel could be said to have been ineffective. See Strickland, 466 U.S. at 687. In other words, because Joseph does not identify the factual bases of this claim, he cannot demonstrate the necessary prejudice.

Moreover, any failure to impeach Government witnesses may have been the result of trial strategy. Joseph's counsel explains that he

> did not attempt to discredit or "impeach"
> many of the government's witnesses because in
> many instances these witnesses supported our
> defense. The defense strategy was to portray
> Joseph as a strong-arm operative who was
> extorting money from Asian gamblers, as
> opposed to being a co-conspirator of Kai Ming
> Want or a member of Wang's racketeering
> organization.

See Declaration of Counsel, ECF No. 1504-13, PageID # 15797.

In Strickland, the Supreme Court stated that, "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." Id. at 681. It

20

explained, "If counsel conducts such substantial investigations, the strategic choices made as a result will seldom if ever be found wanting." Id. (quotation marks and citation omitted). Because Joseph fails to identify what matters counsel should have investigated but did not investigate, Joseph fails to show how that alleged failure could have possibly prejudiced him.  Without such a description, the court cannot tell whether any particular event was a strategic decision that had any effect, either by itself or cumulatively, on the outcome.

> **G.  Joseph's Counsel Was Not Ineffective in Allegedly Failing To Object to Evidence Regarding a "Dying Declaration."**

Joseph claims that his trial attorney was ineffective in failing to object to a "dying declaration," which he says was admitted in violation of evidentiary rules and his right to confrontation of witnesses.  See ECF No. 1466, PageID # 15255. Although Joseph does not identify the dying declaration at issue, he appears to be referring to the dying declaration of Lepo Taliese.  The court notes that, notwithstanding Joseph's claim, his attorney did indeed object to the introduction of the dying declaration when he filed a joinder on Joseph's behalf to a co-Defendant's motion to preclude the dying declaration.  See ECF

Nos. 440 and 557; Transcript of Proceedings on December 27, 2007,

at 11, ECF No. 1218, PageID # 7398.

In any event, the Ninth Circuit foreclosed this

argument on direct appeal:

> The district court did not violate the
> Confrontation Clause by admitting the dying
> declaration of Lepo Taliese.  The
> Confrontation Clause applies only to
> testimonial statements.  Whorton v. Bockting,
> 549 U.S. 406, 419-20 (2007); Davis v.
> Washington, 547 U.S. 813, 823-25 (2006).  The
> statements that Taliese made to police after
> he was shot were not testimonial because,
> objectively viewed, they were elicited to
> assist the police in responding to an ongoing
> emergency.  Michigan v. Bryant, -- U.S. --,
> 131 S. Ct. 1143, 1150 (2011).  Even if
> Taliese's statements were testimonial, the
> district court correctly ruled that they were
> admissible as a dying declaration under Fed.
> R. Evid. 804(b)(2).

See ECF No. 1341, PageID # 13478-79.

Given the Ninth Circuit ruling, it cannot be said that

Joseph's counsel's performance was deficient when the dying

declaration was introduced at trial or that any deficiency

prejudiced Joseph.  Joseph therefore fails to demonstrate

ineffective assistance of counsel based on the dying declaration.

See Strickland, 466 U.S. at 687.

> ### H. Joseph's Counsel Was Not Ineffective in Allegedly Failing To Investigate and Obtain Evidence Establishing the Lack of An Interstate Commerce Nexus.

Joseph next claims ineffective assistance of counsel as follows:

> Counsel failed to investigate and otherwise obtain evidence that the government's evidence establishing interstate commerce nexus was clearly false and inaccurate. Moreover, counsel stipulated into evidence the hearsay statement of witness Kai Ming Wang, regarding certain gambling implements (which purportedly had interstate nexus), where investigation would have revealed that the statement was clearly false and inaccurate.

ECF No. 1466, PageID # 15255.

Because Joseph fails to identify what specific evidence would have been found had his attorney done a better investigation, he does not show that his counsel's performance was deficient. See Strickland, 466 U.S. at 687.

For purposes of addressing Joseph's argument, this court assumes that Joseph is referring to the green felt tabletop, card chute, dice, decks of cards, chips, and such gambling paraphernalia. The evidence at trial was sufficient to establish an interstate commerce nexus. At trial, Jason Dai testified that he was a baccarat dealer at Kai Ming Wang's gambling house. See Transcript of Proceedings of February 6,

23

2009, at 3-81 and 3-84, ECF No. 1235, PageID # 8919 and 8922.
Dai examined a green felt tabletop for a baccarat table at issue
with Chinese characters on it, Exhibit No. 10, testifying that it
could not be purchased in Hawaii and that he purchased a similar
item in Hong Kong.   Id. at 3-81 to 3-82, PageID #s 8919-20.   He
further testified that a card chute used in the gambling room was
purchased from China and that the chips for the room were
purchased from Las Vegas.   Id. at 3-95, PageID # 8933. This is
sufficient evidence to establish the required "minimal"
interstate commerce nexus with the gambling enterprise for
purposes of the RICO statutes.   See United States v. Juvenile
Male, 118 F.3d 1344, 1348 (9th Cir. 1997).

As the court understands the argument, Joseph is
complaining that the specific items may not have been the ones
actually used in gambling operations charged in the Second
Superseding Indictment.   But, as Dai testified, these items were
not the kind of items manufactured locally, see Transcript of
Proceedings of February 6, 2009, at 3-81, 3-82, 3-84, and 3-95,
ECF No. 1235, PageID #s 8919, 8920, 8922, and 8933, so that, even
if the actual exhibits were not themselves used in connection
with the crimes charged, if substantially identical items were
used in the gambling operation during the time frame of the

24

crimes charged in the Second Superseding Indictment, the
interstate nexus was shown.  Joseph does not identify evidence
suggesting local manufacture of these items.  Joseph fails to
demonstrate that any deficient performance on the part of his
attorney prejudiced his defense in this regard.

### I.   Joseph's Counsel Was Not Ineffective in Allegedly Failing To Challenge the Indictment.

Joseph next argues that his counsel was ineffective
when he "failed to object to, and otherwise challenge, the
defective indictment in this case."  ECF No. 1466, PageID
# 15256.  Joseph again fails to explain the factual bases for
this argument.  The court notes that Joseph's counsel did file on
his behalf a "Motion to Dismiss Counts 1, 2, 4, 5, 6, 7, and 8 of
the Second Superseding Indictment For Failure to Allege
Associated-in-Fact Enterprise," as well as a "Motion to Dismiss
for Multiplicity."  See ECF Nos. 439 and 441.  The court is
unsure what other motions Joseph considers appropriate.  The
court cannot conclude that Joseph's counsel was ineffective in
failing to challenge the indictment when Joseph fails to identify
the challenge that should have been made.  Without that argument,
Joseph cannot demonstrate that his counsel's performance was
deficient or that the allegedly deficient performance prejudiced
Joseph's defense.  See Strickland, 466 U.S. at 687.

25

**J.   Joseph's Counsel Was Not Ineffective in Allegedly
Failing To Challenge a Jury Instruction.**

Joseph argues that his counsel was ineffective in

failing "to object to, and otherwise challenge, erroneous jury

instruction[s]."  ECF No. 1466, PageID # 15256.  But once again

Joseph fails to identify which jury instruction is supposedly

problematic.  Without that identification, Joseph cannot

demonstrate that his counsel's performance was deficient or that

the allegedly deficient performance prejudiced Joseph's defense.

See Strickland, 466 U.S. at 687.

**K.   The Court Decides This Matter Without a Hearing.**

The court denies Joseph's § 2255 motion without holding

an evidentiary hearing, as the record before the court

conclusively demonstrates that he is not entitled to § 2255

relief.  See 28 U.S.C. § 2255(b) (requiring a hearing "[u]nless

the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief").

**L.   The Court Declines to Issue a Certificate of
Appealability.**

The court also declines to grant Joseph a certificate

of appealability.  An appeal may not be taken to the court of

appeals from a final order in a § 2255 proceeding "[u]nless a

circuit justice or judge issues a certificate of appealability."

26

28 U.S.C. § 2253(c)(1)(B).  The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When, however, a

> district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Id.

No reasonable jurist would find this court's assessment of the merits of Joseph's constitutional claims debatable or wrong.  Nor would any reasonable jurist determine that the various procedural grounds for denying Joseph's § 2255 petition are debatable.

27

III.      **CONCLUSION.**

For the foregoing reasons, Joseph's § 2255 Petition is denied.  Given the length and lack of clarity of the issues raised by Joseph in his § 2255 motion, the court will not enter judgment until at least April 1, 2014.  If Joseph feels that the court has neglected to rule on any issue raised in his § 2255 motion, ECF Nos. 1466, 1475, and 1509, he must so inform the court by completing the form attached as Exhibit A to this order and placing it in the prison mail system no later than March 24, 2014.  The completed court form must identify what issue was not ruled on in 20 words or less per issue, and must identify the exact page and line of his petition on which the issue was raised.  Joseph may not include any argument in the court form. If the court does not timely receive a completed Exhibit A from Joseph, the court will automatically enter judgment in favor of the Government.

If Joseph seeks reconsideration of or modification to this order or any judgment pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure, he may file a single document that is no longer than either 30 pages or 9,000 words. See Local Rule 7.5.  Such a motion has no bearing on the deadline

of March 24, 2014, for identifying issues raised in the § 2255 petition that this court has inadvertently failed to address.

The Clerk of Court is directed to delay entry of judgment and to include with Joseph's copy of this order two extra copies of Exhibit A for his use.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 27, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


United States of America v. Joseph, Crim. No. 06-00080 SOM (02); ORDER DENYING MOTIONS UNDER 28 U.S.C. § 2255, ECF NOS. 1466, 1475, and 1509

Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 06-00080 (02) SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT RODNEY JOSEPH'S |
| vs. | ) | IDENTIFICATION OF ISSUES |
| | ) | RAISED IN § 2255 MOTION, BUT |
| RODNEY JOSEPH, JR. (02), | ) | NOT ADDRESSED IN THE COURT'S |
| | ) | ORDER OF FEBRUARY 27, 2014 |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT RODNEY JOSEPH'S IDENTIFICATION OF ISSUES
RAISED IN § 2255 MOTION, BUT NOT ADDRESSED
IN THE COURT'S ORDER OF FEBRUARY 27, 2014**

If Defendant Rodney Joseph asserts that he raised issues in his § 2255 motion that were not addressed by the court's order of February 27, 2014, he must identify those issues using this form.  The record citation of where the issue was raised and discussed (ECF No. and page and line citation) must be included, but no further argument may be made.  For each issue identified, the description of the issue may not exceed 20 words.  Anything exceeding 20 words will be disregarded.

| Issue (limited to 20 words per description) | ECF No. | Page and Line Citation |
|---|---|---|
| 1. | | |

| Issue (limited to 20 words per description) | ECF No. | Page and Line Citation |
|---|---|---|
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |

| Issue (limited to 20 words per description) | ECF No. | Page and Line Citation |
|---|---|---|
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |

     If Joseph is submitting this completed form, he must place it in the prison mail system no later than March 24, 2014.

_____

_____

Date

Rodney Joseph, #95590-022
U.S. Penitentiary Atwater
P.O. Box 019001
Atwater, CA 95301

I, Rodney Joseph, hereby certify that I have delivered the

foregoing document to the prison mail system on March __, 2014

_____                    _____
Date                                       Rodney Joseph, #95590-022
                                           U.S. Penitentiary Atwater
                                           P.O. Box 019001
                                           Atwater, CA 95301

4