IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00080 (02) SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| RODNEY JOSEPH, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

On March 20, 2009, after a lengthy jury trial, Rodney Joseph, Jr., was convicted of having violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Violent Crimes in Aid of Racketeering Enterprise Act ("VICAR"), as charged in seven counts in the Second Superseding Indictment of October 12, 2006.  *See* Verdict Form as to Defendant (02) Rodney Joseph, Jr., (March 20, 2009), ECF No. 1090.  Joseph's crimes included a substantive RICO violation of 18 U.S.C. § 1962(c), with racketeering acts in the form of an illegal gambling business, an extortion conspiracy, and robbery (Count 1); a RICO conspiracy in violation of 18 U.S.C. § 1962(c) (Count 2); a conspiracy to operate an illegal gambling business in violation of 18 U.S.C. § 1955 and 18 U.S.C. § 2 (Count 3); a VICAR violation in the form of an assault with a dangerous weapon in

violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2 (Count 4); a VICAR violation in the form of the murder of Lepo Taliese in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2 (Count 6); a VICAR violation in the form of the murder of Romelius Corpuz, Jr., in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2 (Count 7); and a VICAR violation in the form of the attempted murder of Tinoimalo Sao in violation of 18 U.S.C. § 1959(a)(5) and 18 U.S.C. § 2 (Count 8).  *Id.*

On July 9, 2009, the court sentenced Joseph to life in prison as to Counts 6 and 7, as statutorily required; 20 years in prison as to Counts 1, 2, and 4; 5 years in prison as to Count 3; and 10 years in prison as to Count 8.  The court ran all terms concurrently.  *See* ECF No. 1157.  Joseph appealed and the Ninth Circuit affirmed the judgment in a Memorandum Decision filed on January 10, 2012.  *See* ECF No. 1341.  He now moves for compassionate release, relying mainly on the ongoing COVID-19 pandemic.

Joseph is currently serving his life sentence at Lompoc USP.  *See* https://www.bop.gov/inmateloc/ (input Register Number 95580-022) (last visited November 3, 2021).  Joseph says he has been incarcerated for 17 years.  *See* ECF No. 1725, PageID # 19517.

As of November 3, 2021, Lompoc USP reports having 5 active COVID-19 cases in its inmate population and 3 active

COVID-19 cases in its staff, with 168 inmates and 65 staff members having recovered from it.  Three inmates at Lompoc USP have died from COVID-19.  *See*  https://www.bop.gov/coronavirus/ (last visited November 3, 2021).

There are currently 2,251 inmates in the Lompoc Federal Correctional Complex, with 751 in FCI Lompoc, 1,155 in Lompoc USP, and 345 in the camps adjacent to the USP.  *See* https://www.bop.gov/locations/institutions/lom/  (last visited November 3, 2021); https://www.bop.gov/locations/institutions/lof/ (last visited November 3, 2021).  As of November 3, 2021, 1643 of the inmates in the Lompoc Federal Correctional Complex are fully vaccinated (72.9 percent of inmates in the complex).  *See* https://www.bop.gov/coronavirus/ (last visited November 3, 2021). According to the BOP website, 1,428 of the 1,500 inmates at Lompoc USP have been tested for COVID-19, with 252 of them having tested positive.  *See id.* (last visited November 3, 2021).

Joseph's court-appointed cousel paints a different picture of the conditions at Lompoc USP, saying that Joseph told her at some unidentified time that Lompoc USP is not testing inmates and that "everyone I talked to was either sick or just getting over the sickness.  My whole cohort is sick[,] but [they're] not testing, so you won't know the numbers."  Decl. of Counsel ¶ 3, ECF No. 1740-1, PageID # 19633.  However, Joseph did

3

not indicate how he knows how many people have been sick, how he knows whether testing is occurring, or how he can rule out other illnesses, such as the flu.  At the hearing on his compassionate release motion, Joseph testified to a different set of conditions in his facility.  He testified that only about 15 of the 196 inmates in his unit were sick in August and September 2021.  He further stated at the hearing that he only talked with 4 of the 15 inmates who had been sick and that he knew of only one of them ("Trevor") who had asked for a COVID-19 test but had not been tested.

On April 9, 2021, Joseph was offered but declined to receive the Moderna COVID-19 vaccination, which was under emergency use authorization at the time.  *See* ECF No 1737, PageID #s 19597, 19592.  Since then, the Pfizer-BioNTech vaccine has received full approval from the Food and Drug Administration.  *See* https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine (indicating that the Pfizer-BioNTech COVID-19 Vaccine was fully approved by the FDA on August 23, 2021) (last visited November 3, 2021).  The CDC says that the Moderna COVID-19 vaccine, while only under emergency use authorization, is safe, effective, and reduces the risk of a severe case of COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vacc

ines.html (last visited November 3, 2021).  The FDA and the CDC have approved booster shots of the COVID-19 vaccines produced by Pfizer-BioNTech, Moderna, and Johnson & Johnson.

Joseph submits no evidence indicating why he declined the vaccine or explaining whether he has asked to receive any COVID-19 vaccine since declining the Moderna vaccine in April.

In moving for compassionate release under 18 U.S.C. § 3582(c)(1)(A), Joseph notes that he is 53 years old and obese, and has hypertension and hyperlipidemia.  While his medical records support his claimed medical conditions, *see* ECF No. 1737, PageID #s 19577, 19580, 19590, the Government says those conditions are not sufficiently severe to support compassionate release.  For example, Joseph's 2009 presentence investigation report indicates that he was 5 feet 11 inches and weighed 240 pounds.  At the hearing on the present motion, however, the Government noted that Joseph had lost weight and weighed only 210 pounds, giving him a BMI of 29.3, which places him in the overweight but not obese category.  *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited November 3, 2021).  Joseph said that he had changed his diet, causing him to lose weight.  He also said that he has not been prescribed medicine to control his hypertension and hyperlipidemia.

Given the amount of time remaining on Joseph's sentence, his history, the totality of the medical information he has submitted, the circumstances at his facility, the availability of the vaccine to him, and the absence of any indication of his reasons for declining the vaccine, this court denies Joseph's request for compassionate release, concluding that extraordinary and compelling circumstances are lacking.

**II.      ANALYSIS.**

Joseph's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he

filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion).  *See United States v. Balgas*, 2021 WL 2582573, at *1 (D. Haw. June 23, 2021) *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

> **A.   Joseph Has Satisfied the Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A).**

Joseph submitted a compassionate release request to the warden of his prison on August 15, 2020.  *See* ECF No. 1725, PageID # 19529.  The Government concedes that Joseph "has exhausted his administrative remedies as required" by 18 U.S.C. § 3582(c)(1)(A).  *See* ECF No. 1739, PageID # 19610.  The court therefore rules that Joseph has satisfied the prison exhaustion requirement of § 3582(c)(1)(A).

> **B.   This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this judge has expressly recognized that

it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This judge has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, she is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Balgas*, 2021 WL 2582573, at *2;; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the

Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A). Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion. *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

> **C.  Joseph Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release, or That the Requested Reduction Would Be Consistent with Any Applicable Sentencing Commission Policy Statement.**

Joseph contends that this court should exercise its discretion and find that extraordinary and compelling circumstances justify his early release. He relies primarily on the risks he faces if he contracts COVID-19. While the court acknowledges the seriousness of Joseph's concern, the COVID-19 pandemic does not justify early release under the circumstances presented here.

Joseph's medical conditions (age, being overweight with a BMI between 25 and 30, hypertension, and hyperlipidemia) could potentially make him "more likely to get severely ill from COVID-19," meaning that he may be more likely to need hospitalization,

9

intensive care, or a ventilator to help him breathe, or might even die from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 3, 2021).  But Joseph's medical conditions, standing alone, are not exceptional and compelling reasons warranting a reduction in sentence at this time.

Several factors potentially reduce the risks that Joseph faces.  At 53 years old, Joseph is not in the most at-risk age category.  *See* https://www.cdc.gov/aging/covid19/covid19-older-adults.html ("Older adults are more likely to get very sick from COVID-19.  Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die.  **The risk increases for people in** their 50s and increases in 60s, 70s, and 80s.  People 85 and older are the most likely to get very sick.") (last visited November 3, 2021).

Joseph has not demonstrated that he is at significant risk of a severe case of COVID-19.  The evidence does not demonstrate that COVID-19 is running rampant at Lompoc USP, which has only 5 active cases in its inmate population and 3 active cases among staff members (who are presumably staying home if actively infected).  Even Joseph's description of prison

10

conditions at the hearing indicated that only a handful of inmates in his unit were sick in September and October 2021 and that he knows of only a single inmate who asked for but did not receive a COVID-19 test.

The large number of inmates and staff at the Lompoc complex who have recovered from COVID-19 demonstrates that Lompoc earlier had a significant COVID-19 problem, a problem that has apparently been reduced but certainly not eliminated. While the relatively low number of current COVID-19 cases may alleviate Joseph's risk of exposure to COVID-19, especially when 72.9% of the inmate population at the complex has been fully vaccinated against COVID-19, it is that very risk that Joseph cites in seeking compassionate release. However, Joseph has failed to take available measures to further reduce the risk of COVID-19.

For example, in April 2021, Joseph refused the COVID-19 vaccine offered to him. Joseph has not explained why he declined the vaccine or why he has not requested a COVID-19 vaccination since then. The Sixth and Seventh Circuit have held that prisoners who refuse the vaccine cannot be said to have "extraordinary and compelling" circumstances justifying compassionate release. *See United States v. Lemons*, 2021 WL 4699249, at *3 (6th Cir. Oct. 8, 2021) ("a defendant's incarceration during the COVID-19 pandemic–when the defendant has access to the COVID-19 vaccine–does not present an 'extraordinary

11

and compelling reason' warranting a sentence reduction"); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release").

District courts in the Ninth Circuit have similarly ruled that an inmate's refusal to receive a COVID-19 vaccination undercuts that inmate's assertion of extraordinary and compelling circumstances justifying compassionate release. *See United States v. Rollness*, 2021 WL 4476920, at *5 (W.D. Wash. Sept. 30, 2021) (stating that a defendant's refusal to receive a COVID-19 vaccine cuts against compassionate release on the basis of vulnerability to COVID-19 when the defendant fails to demonstrate a vaccine-related allergy to the vaccine); *United States v. Lundy*, 2021 WL 3174898, at *5 (W.D. Wash. July 27, 2021) ("Defendant's failure to offer any explanation for his decision to decline the vaccine weighs against compassionate release on the basis of vulnerability to COVID-19."); *United States v. Oliver*, 2021 WL 2645916, at *4 (S.D. Cal. June 28, 2021) ("Oliver's refusal to be vaccinated weighs heavily against his claim that there is an extraordinary and compelling reason to justify release."); *United States v. Newman*, 2021 WL 2593763, at *4 (D. Or. June 24, 2021) ("Judges in this District as well as other district courts in the Ninth Circuit . . . have declined to

12

grant requests for compassionate release to individuals who have refused COVID-19 vaccines."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021)("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."); *see also United States v. Hill*, 2021 WL 4443316, at *4 (D. Idaho Sept. 28, 2021) (same); *United States v. Miller*, 2021 WL 3669314, at *2 (D. Idaho Aug. 18, 2021) (same); *United States v. Richmond*, 2021 WL 2337626, at *6 (E.D. Cal. June 8, 2021) (same). The court finds these cases persuasive and rules that Joseph's failure to explain why he refused the COVID-19 vaccine offered to him by the BOP cuts against his claim that he should be released because of the possibility that he might get a severe case of COVID-19.

This court stresses that Joseph is correct in arguing that he has no obligation to explain his decision to decline the vaccination. Joseph is certainly within his rights in remaining silent on that point. But on the present motion the burden is on Joseph to justify compassionate release, and his lack of explanation for declining the vaccine weighs against a decision granting his motion.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a), one

13

of which is particularly relevant.  Joseph is serving a statutorily mandated life sentence for crimes of violence.

Of course, there are factors weighing in favor of Joseph's release.  For example, Joseph has completed almost two dozen self-help courses while incarcerated.  *See* ECF No. 1725-1, PageID # 19530.  Additionally, Joseph does not appear to have had any recent disciplinary issues, indicating that Joseph is possibly less of a danger to the community if released at this point.  *See id.*  Joseph plans to live with his wife and work in construction in Hawaii.  *See* ECF No. 1725, PageID #s 19522, 19529; ECF No. 1736, PageID # 19555; ECF No. 1736-1, PageID # 19568.  While Joseph's recent conduct and plan are commendable, these circumstances are not extraordinary or compelling such that compassionate release is appropriate at this time.  Under § 3582(c)(1)(A), it is only extraordinary and compelling reasons that justify a reduction in an inmate's sentence.

Having considered the amount of time remaining on Joseph's sentence, his history, the totality of the medical information he has submitted, the circumstances at his facility, and the availability of the vaccine, this court determines that the reasons raised by Joseph do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence at this time.

## III.     CONCLUSION.

Joseph's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, November 3, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Jospeh*, Cr. No. 06-0080(02) SOM; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE