KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

MICHAEL F. ALBANESE #9421
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:   michael.albanese@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00080 MWJS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO DEFENDANT'S MOTION FOR |
| vs. | ) | REDUCTION IN SENTENCE |
| | ) | PURSUANT TO 18 U.S.C. § |
| RODNEY JOSEPH, JR., | ) | 3582(c)(1)(A)(i) (ECF. No. 1762); |
| | ) | CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| | ) | |

# TABLE OF CONTENTS

Page

I.    Introduction ................................................................................1

II.   Background ...................................................................................2

      A.    Statement of the Case ...................................................2

      B.    The Defendant's Motion ................................................3

II.   Discussion ...................................................................................5

      A.    Administrative Exhaustion ............................................5

      B.    18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13...........5

      C.    Extraordinary and Compelling Reasons...........................7

      D.    The § 3553(a) Factors....................................................16

III.  CONCLUSION    .....................................................................17

<u>Table of Authorities</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Freeman v. United States,*
    564 U.S. 522 (2011) ............................................................................ 6

*United States v. Cheng*,
    2025 WL 573767 (S.D.N.Y. Feb. 21, 2025) ................................... 14-15

*United States v. Jackson*,
    2025 WL 1029866 (D. Conn. Apr. 7, 2025) ..................................... 10

*United States v. Keller*,
    2 F.4th 1278 (9th Cir. 2021) ......................................................... 5, 7

*United States v. Martinez*,
    2024 WL 3966291 (E.D.N.Y. Aug. 28, 2024) ........................... 11, 14

*United States v. Whitehurst*,
    2024 WL 3455708 (D. Md. July 17, 2024) ................................. 10-11

*United States v. Wright*,
    46 F.4th 938 (9th Cir. 2022) ............................................................ 6


<u>Statutes and Rules</u>

18 U.S.C. § 1959 ............................................................................... 9
18 U.S.C. § 3553 ............................................................. 1, 3, 4, 6, 7, 16
18 U.S.C. § 3582 .............................................................1, 2, 5, 6, 7
28 U.S.C. § 994 ............................................................................ 7, 15
U.S.S.G. § 1B1.13 ..................................................................... *passim*

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(ECF. No. 1762)**

## I.    INTRODUCTION

Defendant Rodney Joseph, Jr. ("Joseph"), in his third motion for
compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (the "Third Motion")
seeks a reduction in sentence from life to 240 to 300 months (20 to 25 years),
effectively asking for a sentence of time served.[1]  He seeks this reduction based on
(i) the length of his sentence, (ii) the Catch-all provision of U.S.S.G. § 1B1.13, (iii)
his "youth" at the time of his commission of the original offense, (iv) the disparity
between Joseph's sentence and that of his co-defendants, (v) his medical
circumstances (hypertension and hyperlipidemia), (vi) unusually harsh prison
conditions, and (vii) his rehabilitation. *See* Third Motion, *generally.*

Joseph's Third Motion should be denied because he fails to demonstrate
extraordinary and compelling reasons to reduce his sentence from life to time
served.  His third attempt offers little new information or argument from his last
motion, which was denied by Hon. Susan Oki Mollway on October 12, 2023 (ECF
No. 1761).  Moreover, he fails to show how the § 3553(a) factors weigh in favor of
release.  For all of these reasons, his motion should be denied.

---

[1] According to the PSR, Joseph was arrested by Honolulu Police Department on January 7, 2004,
and transferred to federal custody pursuant to a Writ of Habeas Corpus Ad Prosequendum on
February 22, 2006.  Presentence Investigation Report ("PSR") at ¶ 9.  Accordingly, it appears
that he has served approximately 255 months (21.25 years) to date.

1

## II.    BACKGROUND

### A.    Statement of the Case[2]

Joseph was convicted after jury trial of seven counts, including racketeering (Count 1), conspiracy to commit racketeering (Count 2), conspiracy to operate an illegal gambling business (Count 3), assault with a dangerous weapon (Count 4), murder in aid of racketeering activity (Counts 6 and 7), and attempted murder in aid of racketeering activity (Count 8).  Presentence Investigation Report ("PSR") at pp. 1-2.

On July 6, 2009, the Honorable Susan Oki Mollway sentenced Joseph to a life sentence on Counts 6 and 7 (the murder counts), 20 years as to Counts 1, 2, and 4, 10 years on Count 8, and five years on Count 3, all to run concurrently, as well as supervised release and restitution to the families of Joseph's victims.  ECF. No. 1157 (Judgment).  Joseph is presently serving a life sentence at FCI Victorville, a medium security federal correctional institution near Victorville, CA. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited April 24, 2025).

On July 26, 2021, Joseph filed his first motion for compassionate release, ECF No. 1725, relying primarily on the risks caused by the COVID-19 pandemic. After briefing, Judge Mollway held an evidentiary hearing via video teleconference

---

[2] This section is largely taken from the Government's Opposition to Defendant's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act, ECF No. 1759, with the addition of information regarding Joseph's second motion for compassionate release.

on November 2, 2021.  ECF No. 1745.  Judge Mollway subsequently denied the

motion on November 3, 2021, ECF No. 1746, holding that extraordinary and

compelling reasons for a sentence reduction did not exist, PageID.19644-48, and

that the § 3553(a) factors did not support his motion, PageID.19648-49.  Joseph

appealed that decision to the Ninth Circuit, who affirmed the denial on August 24,

2022.  ECF No. 1754.

Joseph filed his second motion for compassionate release on August 23,

2023.  ECF No. 1756.  On October 12, 2023, Judge Mollway denied that motion,

finding that (i) Joseph failed to exhaust his administrative remedies, ECF No.

1761, PageID.19834-35, (ii) there were no extraordinary and compelling reasons

for a sentencing reduction, ECF No. 1761, PageID.19837-41, and (iii) the §

3553(a) factors do not support compassionate release, ECF No. 1761,

PageID.19842.

Joseph filed the Third Motion on April 7, 2025.  ECF No. 1762.

**B.    The Defendant's Motion**

Joseph asserts multiple grounds for compassionate release, most of which

have been litigated in prior motions.  First, Joseph lists cases in which other courts

have reduced long sentences and sentences for murder, presumably to argue that

the Court could do so in his case.  ECF No. 1762-1, PageID.19849.  He does so

without embracing the fact that he was not convicted of murder, but of two counts

of murder in aid of racketeering, for which the penalty (then and now) is

3

mandatory life imprisonment.  Second, he asserts that he is eligible for

compassionate release under U.S.S.G. § 1B1.13(b)(5), the "Catch-All" provision

without clearly identifying what he is asserting as an extraordinary and compelling

reason for release.  ECF No. 1762-1 at PageID.19852-53.  Third, Joseph argues

that his age at the time he committed the crime (36 years old, *see* PSR at p. 3)

weighs in favor of a sentence reduction.  ECF No. 1762-1 at PageID.19853-56.

Fourth, Joseph claims that the sentencing disparity between himself and his co-

defendants justifies early release.  ECF No. 1762-1 at PageID.19856-57.  Fifth,

Joseph claims that his hypertension and hyperlipidemia, essentially the same

medical conditions he put forward in his First Motion, in the context of the then-

ongoing COVID-19 pandemic (*see, e.g.* ECF No. 1746, PageID.19640), constitute

medical conditions that justify release.  ECF No. 1762-1 at PageID.19857-59.

Sixth, Joseph alleges that federal prisons are, as a general matter, unsafe.  ECF No.

1762-1 at PageID.19859-60.   Last, Joseph alleges that his rehabilitation warrants

early release.  ECF No. 1762-1 at PageID.19860-61.  Joseph further argues that the

§ 3553(a) factors now weigh in favor of a sentencing reduction, based on his

rehabilitation, lack of danger posed, and his release plan.  ECF No. 1762-1 at

PageID.19861-67.

## II.    DISCUSSION

### A.    Administrative Exhaustion

"A court may not consider a motion brought under § 3582(c)(1)(A) unless (1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has 'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate's] behalf,' or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (*citing* 18 U.S.C. § 3582(c)(1)(A)).  "18 U.S.C. § 3582(c)(1)(A) administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." *Id.* at 1282.

Joseph attached his administrative request, dated August 6, 2024, as Exhibit 2 to his motion, and it generally makes out the same claims that he brings before this Court.  *See* ECF No. 1762-3, PageID.19875.  Therefore, the government agrees that the motion has been exhausted.

### B.    18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13

Generally, a court "may not modify a term of imprisonment once it has been imposed…."  18 U.S.C. § 3582(c).  Under the First Step Act of 2018, Congress created a limited exception to this rule by allowing federal inmates to move for

sentence reductions in the district court. *See* 18 U.S.C. § 3582(c)(1)(A). This

statute, commonly referred to as compassionate release, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not
> modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt of
> such a request by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term of probation
> or supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are applicable, if it
> finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

The Court's "disposition of a sentence reduction motion is discretionary, not

mandatory." *United States v. Wright*, 46 F.4th 938, 944-45 (9th Cir. 2022)

(*quoting Freeman v. United States*, 564 U.S. 522, 526 (2011)). The defendant

bears the burden of establishing his eligibility for sentence reduction. *Wright*, 45

F.4th at 951.

Although courts must consider extraordinary and compelling reasons and the

3553(a) factors, they may deny motions for sentence reduction on either of these

grounds. *See Wright*, 46 F.4th at 945, 47 (permitting courts to deny motions for

sentence reduction at "any stage" of the inquiry); see also *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (stating "a district court that properly denies compassionate release need not evaluate each step").

28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), describes the following categories that constitutes "extraordinary and compelling reasons": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) whether the defendant was a victim of abuse while serving his/her prison sentence, (5) a catch-all provision, (6) unusually long sentences.

### C.    Extraordinary and Compelling Reasons

In the following sections, this brief analyzes each of the reasons put forward by Joseph.  None of them, taken individually or in combination, constitute extraordinary and compelling reasons for a sentencing reduction.  Furthermore, very little (if anything) has changed in the § 3553(a) analysis since Judge Mollway determined that those factors weighed against release.  ECF No. 1761,

PageID.19842.  Accordingly, the Third Motion, as the two that preceded it, should

be completely denied.

### 1.    *Unusually Long Sentence*

U.S.S.G. § 1B1.13(b)(6) provides that:

> If a defendant received an unusually long sentence and has served at
> least 10 years of the term of imprisonment, a change in the law (other
> than an amendment to the Guidelines Manual that has not been made
> retroactive) may be considered in determining whether the defendant
> presents an extraordinary and compelling reason, but only where such
> change would produce a gross disparity between the sentence being
> served and the sentence likely to be imposed at the time the motion is
> filed, and after full consideration of the defendant's individualized
> circumstances.

In his Third Motion, Joseph argues that his sentence exceeds "the average prison

sentence imposed nationally for extortion/racketeering in 2023," as well as "the

average prison sentence imposed nationally for murder in 2021."  Third Motion,

ECF No. 1762-1, PageID.19848-50.  This is essentially the same argument that

Joseph made in his second motion, which Judge Mollway found unconvincing.

Then, Judge Mollway observed:

> Joseph argues that the average sentence for federal murder is 22 years.
> He says his mandatory life sentence demonstrates a drastic sentencing
> disparity.  However, Joseph was not simply convicted of a federal
> murder charge.  Instead, in relevant part, he was convicted of a
> VICAR violation in the form of the murder of Lepo Taliese in
> violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2 (Count 6); and a
> VICAR violation in the form of the murder of Romelius Corpuz, Jr.,
> in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2 (Count 7).
> That Congress has chosen to make the penalty for such convictions
> mandatory life indicates Congress's intent to treat such crimes as
> more serious than the murder crimes Joseph compares his crimes to.

*Id.* at PageID.19837-38.  Judge Mollway also noted that there has been no change

in law with regard to the punishment for a violation of 18 U.S.C. § 1959(a)(1), and

if Joseph were sentenced today, he would receive still receive a mandatory life

sentence.  *Id.* at PageID.19838-39.  In the Third Motion, Joseph presents no new

argument regarding length of sentence that Judge Mollway had not already

considered and rejected.  Therefore, his motion should be denied on this basis.

### 2.    *The Catch-all Provision, U.S.S.G. § 1B1.13(b)(5)*

U.S.S.G. § 1B1.13(b)(5) provides that a court may find extraordinary and

compelling circumstances in part based on if "[t]he defendant presents any other

circumstance or combination of circumstances that, when considered by

themselves or together with any of the reasons described in paragraphs (1) through

(4), are similar in gravity to those described in paragraphs (1) through (4)."

Joseph's Third Motion does not specify what, if any, justification he offers under

this section.  Certainly his motion does not put forth any basis that is "similar in

gravity" to the conditions listed in 1B1.13(b)(1) through (4).

### 2.    *Defendant's "Youth"*

In this section of his motion, Joseph cites a number of cases that discuss

problems with imposing long, adult sentences for crimes committed by juveniles.

Third Motion, ECF No. 1762-1 at PageID.19853-55.  All of that discussion is

inapposite, as Joseph was not a juvenile at the time he committed the offenses of

conviction, which included two murders in aid of racketeering – not even close.

9

He was 36 years old.  PSR at p. 3.

The sentencing guidelines do provide that defendants over 65 years old who also are "experiencing a serious deterioration in physical or mental health because of the aging process…" may qualify for a sentencing reduction.  *See* U.S.S.G. § 1B1.13(b)(3).  Joseph is not yet 65 years old, so this provision is not availing.

### 3.    *Sentencing Disparities*

Joseph argues that the disparity between his sentence and that of his co-defendants is an extraordinary and compelling reason for release.  Sentencing disparities between a defendant and his co-defendants are not an enumerated grounds for compassionate release in U.S.S.G. § 1B1.13; however, there are instances where district courts have considered sentencing disparities between a defendant and his co-defendants under U.S.S.G. § 1B1.13(b)(5).  *See, e.g. United States v. Jackson*, 2025 WL 1029866 (D. Conn. Apr. 7, 2025) (without citing a basis in the guideline, the court finds that a combination of circumstances warrants reduction of a 25-year sentence to time served of 14 years: the sentence remains below the guideline range but would be lower based on current views; there is a sentencing disparity with co-defendants; there were dire prison conditions during the pandemic; and the defendant is rehabilitated); *United States v. Whitehurst*, 2024 WL 3455708 (D. Md. July 17, 2024) (granting a sentence reduction based on a large disparity in sentencing among co-defendants); *United States v. Martinez*, 2024 WL 3966291, at *9 (E.D.N.Y. Aug. 28, 2024) (life sentence for drug

trafficking reduced to 360 months based on a combination of the defendant's "post-conviction rehabilitation, low recidivism risk level, harsher-than-intended punishment due to COVID-19 lockdowns and restrictions, more than two decades of imprisonment, and the disparity between his sentence and that of his co-defendant").

Nevertheless, while agreeing that other courts, in some instances, have considered a co-defendant disparity argument – no disparity lies here. Of the nine indicted defendants, only Joseph, Kevin Gonsalves, and Ethan Motta were charged in the murder counts (Counts 6 or 7), the only counts in the indictment that carried a mandatory life sentence. PSR at pp. 4-5. Thus, Gonsalves and Motta are the only reasonable comparators, as any defendant not charged with murder or attempted murder cannot reasonably be compared to the defendant. Both Joseph and Motta went to trial and were convicted of all counts. *Id.* Motta received the same sentence as the defendant, life imprisonment. ECF No. 1262. Gonsalves pled guilty to a two-count information charging one count of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") and one count of conspiracy to operate an illegal gambling business, but Gonsalves did not plead to any murder count. *Id.* at p. 4. Gonsalves was sentenced to 330 months imprisonment, a longer sentence than the one Joseph now seeks. *Id.* at p. 4. Moreover, Judge Mollway, in her October 12, 2023 denial of the second motion, ECF No. 1761, PageID.19840, noted that the comparison to Gonsalves does not

11

weigh in favor of a sentencing reduction for Joseph, because Gonsalves accepted a

plea deal that Joseph rejected in favor of trial, and did not plead guilty to any

murder counts.  *Id.* at PageID.19840-41.  "Joseph fails to explain why he should be

treated better than Gonsalves, a co-defendant who pled guilty to related charges

and who is still incarcerated."  *Id.*

     In summary, even assuming that a sentencing disparity between Joseph and

a co-defendant could be a reason (or part of a reason) to find extraordinary and

compelling reasons for a sentencing reduction, there is no disparity here.

    *4.*   *Medical Circumstances of the Defendant*

     U.S.S.G. § 1B1.13(b)(1)(A) – (D) describe what types of medical

circumstances constitute extraordinary and compelling reasons.  They are:

(A)   The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious
and advanced illness with an end-of-life trajectory). A specific
prognosis of life expectancy (<u>i.e.</u>, a probability of death within a
specific time period) is not required. Examples include
metastatic solid-tumor cancer, amyotrophic lateral sclerosis
(ALS), end-stage organ disease, and advanced dementia.

(B)   The defendant is—

    (i)   suffering from a serious physical or medical condition,

    (ii)   suffering from a serious functional or cognitive
impairment, or

    (iii)   experiencing deteriorating physical or mental health
because of the aging process,

   that substantially diminishes the ability of the defendant to
provide self-care within the environment of a correctional

facility and from which he or she is not expected to recover.

(C)    The defendant is suffering from a medical condition that
requires long-term or specialized medical care that is not being
provided and without which the defendant is at risk of serious
deterioration in health or death.

(D)    The defendant presents the following circumstances—

(i)    the defendant is housed at a correctional facility affected
or at imminent risk of being affected by (I) an ongoing
outbreak of infectious disease, or (II) an ongoing public
health emergency declared by the appropriate federal,
state, or local authority;

(ii)    due to personal health risk factors and custodial status,
the defendant is at increased risk of suffering severe
medical complications or death as a result of exposure to
the ongoing outbreak of infectious disease or the ongoing
public health emergency described in clause (i); and

(iii)    such risk cannot be adequately mitigated in a timely
manner.

U.S.S.G. § 1B1.13(b)(1).  What is clear from this section is that the medical

condition must be one that is untreatable or unmanageable in the prison setting.

Joseph asserts that he has hypertension and hyperlipidemia, but does not allege

(much less substantiate) that (i) he is on an end-of-life trajectory, U.S.S.G. §

1B1.13(b)(1)(A), (ii) that his ability to provide self-care is in any way diminished,

U.S.S.G. § 1B1.13(b)(1)(B), (iii) that he requires long-term or specialized medical

care, U.S.S.G. § 1B1.13(b)(1)(C), or that he is at a facility affected by an outbreak

or public health emergency, U.S.S.G. § 1B1.13(b)(1)(D).  Accordingly, he has not

demonstrated that extraordinary and compelling reasons exist based on a medical

condition.

### 5.    *Unusually Harsh Prison Conditions*

In purely conclusory fashion, Joseph alleges that BOP facilities in general suffer from unusually harsh conditions as a result of a combination of staff shortages and the presence of Central American gang members.  ECF No. 1762-1, PageID.19859-60.  He does not allege anything specific to himself or the institution at which he is residing.  There are some examples of district courts considering the unusually harsh conditions caused by the COVID-19 pandemic, in combination with other factors, in granting compassionate release motions.  *See, e.g. United States v. Martinez*, 2024 WL 3966291, at *9 (E.D.N.Y. Aug. 28, 2024) (Garaufis, J.) (life sentence for drug trafficking reduced to 360 months based on a combination of the defendant's "post-conviction rehabilitation, low recidivism risk level, harsher-than-intended punishment due to COVID-19 lockdowns and restrictions, more than two decades of imprisonment, and the disparity between his sentence and that of his co-defendant"); *United States v. Cheng*, 2025 WL 573767, at *4 (S.D.N.Y. Feb. 21, 2025) (Abrams, J.) (relief is granted under § 1B1.13(b)(5) where the defendant suffered a violent, potentially racially motivated attack with lasting damage and harsh pandemic conditions).  However, there is no precedent that the government could find to support the contention that unsubstantiated, generalized claims of harsh prison conditions, outside the context of a global pandemic, are sufficient to establish extraordinary and compelling reasons.  Such

14

claims would apply to every federal inmate. Joseph's unspecified and unsupported allegations do not demonstrate extraordinary and compelling reasons for early release.

### 6.    *Rehabilitation*

Joseph also argues that his rehabilitation is an extraordinary and compelling reason to reduce is sentence. Congress has stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Nevertheless, Joseph's rehabilitation is neither extraordinary nor compelling when viewed in combination with other facts. While his completion of several Education Courses and his lack of disciplinary history in the last six months, ECF No. 1762-2, PageID.19870, is a positive factor, Joseph's most recent Individualized Needs Plan also highlights steps that Joseph has yet to complete in his rehabilitation process. Under "Progress since last review," the report notes, "Poor progress, since the last program review he has not secured a work detail or enrolled in any course as recommended." *Id.* at PageID.19871. Given that in his last evaluation, his progress was noted as "poor," it is hard to describe his rehabilitation as extraordinary or compelling.

Joseph raised essentially the same arguments in his Second Motion. *See* ECF No. 1756 at PageID.19682; *see also* Joseph's June 1, 2023 Individualized Needs Plan, ECF No. 1756-3, PageID.19735-37. Nevertheless, Judge Mollway did not find that his progress on rehabilitation warranted a reduction in sentence. *See*

ECF No. 1761 at PageID.19842 ("Nevertheless, while Joseph's recent doncut and

family relationships are commendable, these circumstances, on balance, do not

support compassionate release at this time).

### D.    The § 3553(a) Factors

Any compassionate release decision – even for a statutorily eligible

defendant – must also consider the factors under 18 U.S.C. § 3553(a).  *See* 18

U.S.C. § 3582(c)(1)(A)(i).  Here, as they did in the previous two motions, the §

3553(a) factors weigh conclusively against compassionate release.

The Court's analysis must start with the seriousness of Joseph's criminal

conduct, which is, to put it bluntly, as serious as criminal conduct can get.  Joseph

participated in a racketeering enterprise, leading to his involvement in two murders

and one attempted murder.[3]  Aside from being two years older, no significant

factor has changed since Joseph last asked this Court for compassionate release.

His rehabilitation, while generally positive, is not remarkable.  His release plan is

---

[3] As the government summarized in its response to the Second Motion, Joseph was hired by co-defendant Kai Ming Wang to provide security for Wang's illegal gambling enterprise.  PSR at ¶ 31.  In or about August 2003, Joseph, along with others, committed an armed robbery of a rival illegal gameroom in Pearl City.  *Id.* at ¶¶ 32-33.  On or about January 4, 2004, a group of individuals working security under Joseph met with Wang and complained that they were not being paid.  *Id.* at ¶ 35.  This group included Tinimalu Sao, Romelius Corpuz, and Lepo Taliese.  *Id.*  The group worked out a new security contract with Wang, squeezing Joseph out.  *Id.*  On or about January 7, 2004, Joseph and co-defendant Ethan Motta confronted Taliese, Sao, and Corpuz at a funeral and arranged to meet near the Pali Golf Course.  *Id.* at ¶¶ 38-39.  That meeting quickly turned to violence: Motta shot Sao in the face, Corpuz and Taliese were both shot in the back by some combination of Motta and Joseph.  *Id.* at ¶¶ 39-41.  Corpus and Taliese died of their injuries.  *Id.* at ¶¶ 40-41.  Joseph turned himself in to an HPD officer late the same day.  *Id.* at ¶ 42.

positive, but such is a necessary, but not sufficient, condition for his release. When

balanced against the seriousness of his offense, the relevant factors do not weigh in

favor of release.

## III.    CONCLUSION

For all of these reasons, the Government respectfully requests that the

Defendant's Third Motion be denied.

DATED:  April 30, 2025, at Honolulu, Hawaii.

Respectfully yours,

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

*/s/ Michael F. Albanese*
By_____
MICHAEL F. ALBANESE
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below,

a true and correct copy of the foregoing was served on the following at their last

known addresses:

<u>Via U.S. Mail</u>
Rodney Joseph, Jr.
Reg. No. 95580-022
FCI Victorville Medium II
Post Office Box 3850
Adelanto, CA 92301

DATED:  April 29, 2025, at Honolulu, Hawaii.

*/s/ Michael F. Albanese*

_____
U.S. Attorney's Office
District of Hawaii